## Haydenville Mining and Manufacturing Company *v.* Steffler.

*Partnership—Evidence—Question for jury.*

In an action of assumpsit for goods sold and delivered where the plaintiff alleges that the goods were bought for a partnership of which the defendants were members, and the defendants deny this allegation, and the other evidence in the case as to the existence of the partnership is conflicting, the case is for the jury.

In an action for goods sold and delivered, where the plaintiff alleges that the defendants were partners of the person who bought the goods, and the evidence is conflicting as to whether the purchase was within the scope of the partnership business, the case is for the jury.

*Practice, C. P.—Trial—Charge of court—Review.*

In the absence of special request for more specific instructions, it is well settled that if no particular error of law or misstatement of the evidence can be pointed out, the court will be reviewed on the general effect of the charge and not upon sentences or paragraphs disconnected from the context which qualifies or explains them; if, as a whole, the charge was calculated to mislead, there is error in the record; if not, there is none.

Argued May 10, 1901.  Appeal, No. 24, April T., 1901, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., June T.,

1898, No. 719, on verdict for defendants in case of Haydenville Mining & Manufacturing Company v. Henry E. Steffler, John Brown and Orna R. Hanfray, partners as Darlington Fire Clay Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit for goods sold and delivered. Before SLAGLE, J.

At the trial it appeared that suit was brought for twenty-two carloads of fireproofing.

The facts appear by the opinion of the Superior Court.

The court charged in part as follows :

[Mr. Steffler and Mr. Brown, however, say that there never was any partnership formed, either with Mr. Dickey or with Mr. Hanfray.] [3]

[On the contrary, Mr. Steffler says that they never actually formed a partnership. That they expected to form one, but did not, and that the difficulty was that Mr. Dickey, or Mr. Hanfray, who took his interest, never paid any money to start the business. Possibly that might account for the remark of Mr. Brown in reference to his letters, that he was wanting to get some money out of Mr. Dickey for the running of the business; asking him to get some things that they needed at that place. Mr. Steffler admits that some business was done under the name of the old concern, that is, Darlington Fire Brick Company, and also under the name of the Darlington Fire Clay Company, but he says that they were just moving on towards the formation of a partnership, and none was ever formed until he and Mr. Brown formed the firm of Steffler & Brown, and transacted business under that name, and that he never had a partnership other than that.] [4]

[Now, as between the parties themselves, there may be an arrangement that did not constitute a partnership, business transacted, and run on, so that there would be another question arising there, even though there was no actual partnership formed between the parties. Was there a conducting of the business in such a way as to give the public to understand that there was such a partnership? People may, without being partners between themselves, without intending to be partners, transact business in such a way as to be responsible as partners

to the public; but that arises only when the business conducted by them is such as to give the public to understand that they are partners, and if so, they would be liable as such.

Now, you will take what was done and say whether or not it was of such a character; that is, done by Brown and Steffler or Steffler and Brown, because Mr. Dickey might, without their authority, do things that would bind him as a partner, but unless they were done by Steffler and Brown, or with their knowledge and consent, in such a way as to give the public the impression that they were partners in the concern and doing business under a certain name, they would not be responsible. So that would be the second question.] [5]

[Then you come to the third question: Was this contract with the plaintiffs within the business of the company if you find that there was such a partnership? Was the contract to do the work on the high school building a contract within the provisions of their arrangement? Was it within the line of their business? Because, though there be a partnership the partners have a right to bind the partnership only in the line of their business.] [6]

[Now, here is the main contention in the case, it seems to me, because if there was a partnership under the name of the Darlington Fire Clay Company, the business for which they were organized appeared to be the making and manufacturing of fire brick, possibly with the view to manufacturing other forms of the same class of work. But it would not, naturally, include the taking of contracts for work, though those contracts included the use of the materials which they were making. Mr. Steffler was a general contractor, and, without evidence, it ought to be very clear, you would have a right to say, that the firm of the Darlington Fire Clay Company was interested in other contracts he had taken for building houses. It would not be in the same line, although he would use some of their material. Therefore, this matter of contracting would seem to be outside of the manufacturing business that they proposed to establish. In reference to this point: whether or not this was intended as a part of the business of the Darlington Fire Clay Company—if you find such a partnership existed—you take all of the circumstances surrounding it, and determine whether or not it was a contract of that company.] [7]

[If you find there was such a partnership, you will find what their business was, and whether the contract with the South Side High School, with Mr. Seifert doing the work upon the South Side High School, was within the lines of that business, or was made with the knowledge and consent of the defendants, Steffler and Brown, and for their benefit or for the benefit of the firm of which they were members. If you do not find that fact, then your verdict should be for the defendants.] [8]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* among others were (3–8) above instructions, quoting them.

*R. B. Ivory*, for appellant, cited: Hoskinson v. Eliot, 62 Pa. 393.

*J. M. Stoner*, with him *J. Charles Dickey*, for appellees.

OPINION BY RICE, P. J., July 25, 1901:

One John Seibert had a contract for the erection of a school building in the city of Pittsburg. In July, 1897, he entered into a subcontract with one Alexander Dickey whereby the latter undertook to furnish and put in place all the fireproofing and concreting over the same according to plans and specifications of the architect and under his direction and to his satisfaction. Dickey performed his part of the contract and was paid the stipulated price. In order to carry out the same, Dickey ordered of the plaintiff twenty-two carloads of fireproofing of specified forms and dimensions, which were duly delivered at the school building and were received and used by Dickey. In giving his order he used a letter head bearing the name, "Darlington Fire Clay Co., 704 Penn Building, Pittsburg, Pa.," and signed the order, "Darlington Fire Clay Co., per A. Dickey." This action for the price was brought against Henry E. Steffler, John Brown and Orna Hanfray, "partners doing business as Darlington Fire Clay Co." Hanfray was not served. An affidavit of defense was filed on behalf of the other two defendants denying the alleged partnership between them and Hanfray, denying also that the fireproofing had been ordered by or delivered to them, and alleg-

ing that they were partners in the business of manufacturing
fire brick under the name of. Steffler and Brown. It is thus
seen that under the pleadings the burden of proving the alleged
partnership or an ostensible partnership under the name of
"Darlington Fire Clay Co." and the delivering of the fire-
proofing to them or to one of their number or to their agent
acting within the general scope of the business or of his em-
ployment, rested on the plaintiff.

On the trial of the case, Hanfray, when called as a witness
by the plaintiff, testified in effect that he was not a partner and
had no actual or beneficial interest in the business.   Thereupon,
upon the plaintiff's motion, the record was amended by striking
out Hanfray's name as a party defendant.   The plaintiff then
took the position that the partnership as originally formed was
between Dickey, Steffler and Brown; that they purchased the
plant of Darlington Fire Brick Company with the intention of
carrying on the business of manufacturing fireproofing; and
virtually that Dickey's interest in the concern was put in the
name of Hanfray, his stepson, in order to protect it against his,
Dickey's, creditors.   The defendants while conceding that there
were negotiations for the formation of a partnership between
them and Dickey, alleged that the latter fell out; that the title
to the real estate was taken in the name of Steffler, Brown and
Hanfray, but that the latter's interest therein was subsequently
sold at sheriff's sale.   The testimony of Steffler and Brown
may be summarized in general terms as denying that at the time
of the transaction in suit there was a partnership between them
and either Dickey or Hanfray, and as alleging that the business
carried on by them in the name of Steffler and Brown was the
manufacture of fire brick.   It would serve no good purpose to
incumber this opinion with citations from the testimony, cor-
roborative of the conflicting allegations of the parties.   A criti-
cal examination of it has convinced us that the learned trial
judge committed no error in saying to the jury that the alleged
partnership with Dickey or Hanfray was denied, and would
have committed grave error if he had charged them that it was
admitted or was established by uncontradicted testimony.   The
same is true of the plaintiffs' contention that if as between them-
selves there was not a partnership, yet there was an ostensible
partnership which as to the world made these defendants re-

sponsible for the acts or contracts of Dickey or Hanfray. These were mixed questions of law and fact depending for their decision upon the credibility of witnesses and the inferences to be drawn from their testimony. The court could not do otherwise than submit them to the jury with appropriate instructions, which we think was done.

But assuming that there was an actual or an ostensible partnership between these defendants and Dickey or Hanfray under the name of Darlington Fire Clay Company was the contract of Dickey with the plaintiff within the scope of the partnership business? Or, if it was not in the scope of the business for which the partnership was formed, were third persons dealing with Dickey warranted in assuming from the acts or declarations of these defendants that it was within the scope of his authority as a partner or as manager? It is to be observed that this plaintiff, although affected with notice of the fact, or at least with such notice as put it upon inquiry, that this purchase was made for a specific purpose, apparently made no inquiry as to the persons constituting the Darlington Fire Clay Company, or as to the relation of that firm to the erection of the school building for which the fireproofing was ordered. It certainly cannot be contended that either Steffler or Brown did anything to mislead the plaintiff or that the plaintiff was induced by anything that they said or did to believe that Dickey had authority to bind them in a contract of this nature. In other words neither of them had any communication with the plaintiffs. The latter's negotiations were with Dickey. Nor is it pretended that the defendants received or shared in the benefits of the transaction. It was, to say the least, an open question whether the manufacture, purchase or sale of fireproofing was within the scope of the business conducted by the defendants. It is not for us to determine the fact; that was the province of the jury. And, evidently, the plaintiffs' counsel so regarded it upon the trial, for they presented no request for special instruction upon that, or any other point, although they were warned by the defendant's fourth point that the question was raised. It was clearly a question of fact as the court correctly held in refusing the defendants' point and was for the jury. In the absence of special request for more specific instructions, it is well settled that if no particular error of law or misstatement

of the evidence can be pointed out, the court will be reviewed on the general effect of the charge and not upon sentences or paragraphs disconnected from the context which qualifies or explains them; if, as a whole, the charge was calculated to mislead, there is error in the record; if not, there is none. That there was evidence tending strongly to corroborate the plaintiffs' contention as to the existence of the alleged partnership and as to the scope of the business, which the trial judge might appropriately have recited more in detail, is true. It is equally true that there was very strong evidence tending to contradict the testimony of Dickey, the plaintiff's principal witness, to which no specific allusion was made in the charge. The controlling questions, however, were fairly and clearly stated with sufficient reference to and recital of the evidence to enable the jury to understand them. Perhaps if we were the tribunal to pass upon the credibility of the witnesses and to draw inferences of fact from their testimony, we might reach a different conclusion from that arrived at by the jury. We have not undertaken to show that their verdict was the only one that could have been fairly rendered under the evidence. We are convinced, however, that the case was for them, that no particular error of law or material misstatement of the evidence can be found in the charge, and that as a whole it was neither so inadequate as to be misleading, nor one-sided.

All the assignments of error are overruled and the judgment is affirmed.